**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

GLENDA A. JONES,

    Plaintiff,

vs.                                                                              CASE NO. 3:01-cv-95-J-TEM

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

    Defendant.

_____

**O R D E R**

Plaintiff's counsel in this Social Security case has filed a Motion for Award of Attorney Fees under 42 U.S.C. § 406(b) (Doc. #34), seeking an award under a contingency fee contract for twenty-five percent of the past due benefits Plaintiff was awarded in the case. The Defendant has filed a response opposing the award of the full twenty-five percent, arguing it would amount to a windfall (Doc. #35).

*History of case:*

Plaintiff initially filed this action in federal court as a *pro se* litigant in January 2001 (Doc. #1). Defendant, the Commissioner of the Social Security Administration, moved to have the case remanded for further administrative action in May 2001 (Doc. #9). Remand was granted (Doc. #12). The Defendant moved to reopen the case in December 2003 (Doc. #13) and filed an answer (Doc. #14). Plaintiff's counsel filed her appearance about two weeks later (Doc. #16).

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25, Federal Rules of Civil Procedure, Michael J. Astrue is substituted as Defendant herein.

Plaintiff's brief was filed in May 2004 (Doc. #22) and Defendant filed a memorandum in support of the Commissioner's decision denying benefits (Doc. #23).  Oral argument was held in February 2005 (Doc. #26).  An Order and Opinion was issued reversing the Commissioner's decision and remanding the case for further proceedings in March 2005 (Docs. #28, #29).

Plaintiff filed a motion for attorney fees under the Equal Access to Justice Act ("EAJA")[2] (Doc. #30), which was granted (Doc. #31).

Subsequently, the Social Security Administration, after further administrative hearing, awarded disability benefits to the Plaintiff with the benefits commencing on February 29, 1996, based on Plaintiff's 1997 application (Doc. #34-1, Exh. A).

Thereafter, the instant motion for attorney fees was filed (Doc. #34).

*Social Security statutory fee structure:*

Congress has enacted laws to regulate fees for representation of Social Security claimants at both the administrative stage and in federal court.  At the administrative stage, 42 U.S.C. § 406(a)(1) provides the Commissioner may "fix" a reasonable fee for representation before the agency in accordance with regulations.  Under that section, the fees for a successful applicant are capped at an agreed amount, providing it is no more than twenty-five percent of the past-due benefits or $4,000, whichever is lower.  42 U.S.C. § 406(a)(2)(A).  The statute allows the Commissioner to raise the $4,000 cap periodically to correspond with increases in primary insurance amounts.  42 U.S.C. § 406(a)(2)(A)(iii).

For cases in which a court has issued a judgment favorable to a claimant

---

[2]Title 28 U.S.C. § 2412.

represented by an attorney, the Court "may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of twenty-five percent of the total of the past-due benefits to which the claimant is end by reason of such judgment. . . ." 42 U.S.C. § 406(b)(1)(A).  That section has been interpreted to allow an award of benefits where the district court remands the case to the Commissioner of Social Security and the Commissioner on remand awards past-due benefits.  *Bergen v. Commissioner of Social Security*, 454 F.3d 1273, 1276 (11th Cir. 2006).

An attorney for a prevailing party also may claim "within thirty days of final judgment" reasonable fees for the representation under the Equal Access to Justice Act, 28 U.S.C. § 2412 (b).  The party also must allege that the position of the United States in the matter "was not substantially justified."  28 U.S.C. § 2412 ((d)(1)(B).  That fee may be claimed within thirty days after the court issues final judgment in the action, which the statute defines as a "judgment that is final and not appealable. . . ."  42 U.S.C. § 2412(d)(2)(G).  In a case involving a sentence six remand, the filing period does not begin until after the post-remand proceedings are completed, the Commissioner returns the case to federal court, the court enters final judgment and the appeal period runs.  *See Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991).

In defining "not substantially justified," the Supreme Court has indicated EAJA fees are not available every time a claimant prevails, but only when the Commissioner's position lacks "a reasonable basis in law and fact."  *Pierce v. Underwood*, 487 U.S. 552, 566 n.2 (1988).

An attorney who is successful in claiming both EAJA fees from the United States and an award under § 406(b) (which comes out of past-due benefits) must refund "to the

claimant the amount of the smaller fee." *Gisbrecht v. Barnhart,* 535 U.S. 789, 796 (2002).

*Legal analysis:*

The questions presented are whether awarding the amount requested under the contingency fee agreement is reasonable, and, if it is not, what constitutes a reasonable fee. The framework for the analysis comes from the *Gisbrecht* case, in which the Supreme Court examined conflicting methods of calculating fees under § 406(b) in various circuits.[3] The Court concluded that § 406(b) does not displace contingency fee arrangements as the primary means by which fees are set for representing Social Security claimant in court. *Gisbrecht*, 535 U.S. at 807. The Court found that Congress had determined that contingency fee agreements would be unenforceable if they exceed twenty-five percent, but within that boundary the attorney need only show that the fee sought is "reasonable for the services rendered." *Id.* The Court said downward adjustments can be made if the benefits are large in comparison to the amount of time counsel has spent in the case to prevent windfalls. *Id.* at 808.

The Court did not issue specific guidelines for determining reasonableness, noting that courts are accustomed to making reasonableness determinations. *Id.* The Court did, however, note with approval that lower courts appropriately considered the character of the representation, the results achieved and any delay caused by the attorney, when assessing

---

[3]The Eleventh Circuit was one of several circuits using a lodestar method based on hours spent on a case multiplied by a reasonable hourly rate. *Gisbrecht* at 799; *Kay v. Apfel*, 176 F.3d 1322, 1324 (11th Cir. 1999). The Supreme Court noted the lodestar method was commonly used in fee-shifting situations in which the losing party was required to pay the fee. Under § 406(b), however, the fee is paid from the past-due benefits collected. Moreover, the Court noted that Congress had in 1990 authorized contingency-fee agreement for agency-level representation in § 406(a). *Gisbrecht,* 535 U.S. at 805.

the reasonableness of the sought fees. *Id. Gisbrecht* also indicates the lower courts may require the attorney to submit a record of the hours spent representing the client, as well as the lawyer's normal hourly billing charge. *Id.*

Justice Scalia in a dissenting opinion stated "I do not know what the judges of our district courts and courts of appeal are to make to today's opinion," indicating that the factors the court proposed courts examine in determining reasonableness are the antithesis of contingency fee agreements. *Id.* at 809. He also stated that the majority opinion does nothing to subject § 406(b) fees to "a uniform rule of law." *Id.*

Some courts indeed have indicated difficulty in applying the aforementioned factors. One district court in 2006 noted that *Gisbrecht* does not instruct precisely how a district court should quantify the "downward adjustment" when the court concludes such an adjustment is in order. *Ellick v. Barnhart*, 445 F.Supp. 2d 1166, 1168 (C.D. Cal. 2006). In *Ellick*, the court analyzed forty-three reported post-*Gisbrecht* decisions and concluded in twenty-three cases the courts had approved the requested twenty-five percent contingency fees, although using different reasoning; in eight cases the attorneys had requested fees which were less than twenty-five percent and the courts had approved those requests; and, in twelve cases the courts reduced requested fees. *Ellick, supra,* 445 F.Supp. 2d at 1168-1171. Of the cases in which fees were reduced to less than twenty-five percent of the awarded benefits, two courts used *de facto* hourly fees of 2.5 times the attorney's normal hourly rate, three reduced fees to rates the judges considered reasonable based on experience, and in five cases the fees were reduced drastically without precise

explanation.[4]

One circuit has affirmed a district court's award of a twenty-five percent fee over the Commissioner's objection that the award resulted in an hourly "windfall" rate of $736.84. *Mudd v. Barnhart*, 418 F..3d 424, 417 (4th Cir. 2004). The Fourth Circuit found the district court had considered the overall complexity of the case, the lawyering skills necessary, the risks involved, and the significance of the result achieved in district court. *Id.* at 428. Such analysis was satisfactory to determine a reasonable fee under *Gisbrecht*.

In this district, one court has found a range up to 2.5 times a normal fee would be reasonable, particularly with regard to other factors in that case. In *Johnson v. Barnhart,* Civil Action No. 3:03-cv-68-J-MMH (M.D. Fla., January 12, 2007)(unpublished decision), the court concluded $250 per hour constituted a normal hourly rate for Social Security appeals and up to 2.5 times that rate would reasonably account for the contingency nature of the case.

*Application to the case*:

In accordance with *Gisbrecht*, the Court will determine a reasonable fee award considering counsel's experience and background, her work on this case, the hours spent representing the client at the district court level, the complexity of the case, the difficulty of

---

[4]The other two cases involved somewhat unusual facts where the courts deducted fees attributed to a paralegal's work in one case and in the other case decreased fees based on a recovery for two minor children which did not involve additional work on the attorney's part. *Ellick*, 445 F.Supp. 2d at 1171.
 Clearly, there have been numerous other cases in the last year since *Ellick*, but this Court has not noticed any further distinctive trend that would require additional analysis.

the case at the time counsel agreed to take it,[5] whether counsel caused any delay, and counsel's normal hourly rate.  In this case:

(1) Counsel's practice is devoted to Social Security cases.  Indeed, she is author of several publications concerning Social Security law, including *Bohr's Social Security Issues Annotated*, with annual supplements, a well-regarded compilation of Social Security case law by appellate circuits (*see* Doc. #40-2).  She is (or was) president of the National Organization of Social Security Claimant's Representatives and has lectured for twenty years on Social Security topics (Doc. #40-2).

(2) The attorney handling the case began representing the client in 2003 after the client had filed the district court appeal of the Commissioner's denial of benefits.[6]  Counsel filed a twenty-page memorandum which was fact specific and avoided a boiler-plate recitation of Social Security law.  In additional, oral argument was held at which counsel argued persuasively.  The Court issued a decision remanding the case to the Commissioner, citing two reasons specifically raised by counsel.[7]

---

[5]The Court notes that in the Eleventh Circuit's consideration of a reasonable fee under the lodestar method, one of the twelve factors examined was "the undesirability of the case."  *Kay v. Apfel*, *supra,* 176 F.3d at 1327.  Given the nature of Social Security cases, particularly those in which the attorney is not in the case at the beginning, that seems an appropriate factor even under a *Gisbrecht* analysis.  The factor also could be viewed as the substantial risk of loss at the time the case was undertaken.

[6]The Commissioner had initially denied benefits in 2001 and the client filed an appeal in district court.  The Commissioner then requested a remand under 42 U.S.C. § 405(g).  (Doc. #9).  Subsequently, the Commissioner again denied benefits, the district court case was reopened, and counsel filed her appearance (Doc. #16).

[7]The two issues were that the administrative law judge failed to comply with the Commissioner's regulations in evaluating a claimed mental impairment and that the ALJ did not pose a proper question to a vocational expert because the question ignored severe impairments found by the ALJ.

After the remand, another ALJ issued an opinion fully applying the Regulations directed to the mental impairments and thereby found the claimant disabled (Doc. # 34-2). At the subsequent hearing, and after a complete hypothetical question, the VE testified there was no work in the national economy the claimant could perform.

The medical history in the case was complex and the administrative file was voluminous, as indicated by the ALJ's decision (Doc. #34-2).  Counsel alertly found two issues which proved persuasive at both the district court level and the subsequent ALJ hearing.

(3)  Counsel spent 33.9 hours working on the case at the district court level (Doc. #40-2), an amount of time the Court considers reasonable based on the complexity of the case.

(4)  As stated above, the medical history in the case was extensive and the case involved substantial complexity.  The claimant was awarded more than $70,000 in past-due benefits.

(5) Because counsel was not contacted by the claimant until after the Commissioner had obtained a remand and then a second denial of benefits by an ALJ's decision, counsel notes she took a substantial risk of loss when accepting the case (Doc. #34 at 8).  The Court agrees with that assessment.  At the time counsel accepted the case, there had been two ALJ decisions denying benefits.  It was not a simple case involving an incomplete record, but rather was one that required a full examination of the record on the merits. *See, e.g., Thomas v. Barnhart*, 412 F.Supp. 1240, 1244 (M.D. Ala. 2005) (discussing assumption of risk by an attorney representing a previously denied disability claimant).  Thus, as in *Thomas,* there was a "very real risk of [counsel] gaining nothing in return for [her] efforts."

*Id.*

(6) Counsel did request one continuance to file Plaintiff's brief in the case, causing a delay of under two months. However, the reasons stated in her request were justified (Docs. #19, #20), particularly considering the complexity of the record and the fact counsel had been of record for only about five months.

(7) Counsel stated that her normal hourly rate at the time was $200 an hour (Doc. #40-2), a rate the Court finds reasonable considering her expertise.

Dividing the contingency fee by the hours spent at the district court level, the fee would create an hourly rate of about $510 in this case. That dollar amount is approximately 2.5 times the normal hourly rate. There was an EAJA award of $5,092.64 in the case, which counsel will have to return.

The Commissioner argues that even if the EAJA fees are subtracted from the calculation, the hourly fee would amount to $362 an hour and still be a "windfall." (Doc. #35). The Court cannot agree. Some Social Security attorneys in the area have hourly rates greater than that amount.

The Court would note that the requested fee would amount to approximately $510 an hour for the district court work in this case, an amount less than the $736 an hour fee approved by the Fourth Circuit in *Mudd*. In addition, the fee in this case would be approximately 2.5 times the attorney's normal fee, a factor another court in this district has considered. *Johnson v. Barnhart,* Civil Action No. 3:03-cv-68-J-MMH (M.D. Fla., January 12, 2007)(unpublished decision).

Counsel argues that a fee of about 2.7 times the fee the attorney would have charged based on a normal hourly rate is necessary to make up for the risk of loss in Social

Security cases (Doc. #34 at 7). Without disputing the statistical analysis counsel applied[8], the Court would note that it would seem to omit that counsel may receive EAJA fees in some of the remanded cases in which the plaintiffs do not prevail on remand. Nonetheless, the Court merely considers the statistical analysis another factor in an overall determination of reasonableness.

Considering all of the factors in the case, the Court finds the requested fee is reasonable under the direction of *Gisbrecht*.

### *Conclusion*

The Court will **GRANT** counsel's Motion for Award of Attorney Fees under 42 U.S.C. § 406(b) in the amount of $17,363.75.  However, as required under the statute and *Gisbrecht*, counsel must refund to the Plaintiff the amount of $5,092.64 representing the EAJA fees previously awarded counsel (Doc. #31).

**DONE AND ORDERED** at Jacksonville, Florida this 30th day of July, 2007.

Copies to:
All counsel of record

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge

---

[8]Counsel argues based on 2000 statistics that federal courts award plaintiffs disability in six percent of cases and remand in another forty-eight percent of cases. After the remand, about sixty percent of claimants are awarded benefits. She thus argues that claimants prevail only about thirty-five percent of the time. Thus, to make up for the risk of loss, Social Security counsel need to charge a winning client 2.7 times the fee the attorney would have charged on a non-contingent basis.